Bonnie A. Freeman, Esq. (SB 180502)
SENNEFF FREEMAN & BLUESTONE, LLP
50 Old Courthouse Square, Suite 401
P.O. Box 3729
Santa Rosa, CA 95402-3729
Telephone: 707-526-4250
Facsimile: 707-526-0347

Attorneys for Defendants County of Sonoma (also erroneously sued as Sonoma County Sheriff's Department), Bill Cogbill, John Gillette, Jeffrey Toney, Juan Valencia

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMARA JOHNSTON, | No. CV 10 3592 CRB |
| Plaintiff, | |
| v. | **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT ON BEHALF OF DEFENDANTS COGBILL, GILLETTE, TONEY AND VALENCIA** |
| COUNTY OF SONOMA; SONOMA COUNTY SHERIFF'S DEPARTMENT; SHERIFF BILL COGBILL, individually and in his capacity as Sheriff of Sonoma County Sheriff's Department; DEPUTY OFFICER JOHN GILLETTE, individually and in his capacity as a Deputy with the Sonoma County Sheriff's Department; DEPUTY OFFICER JEFFREY TONEY, individually and in his capacity as a Deputy with the Sonoma County Sheriff's Department; DEPUTY OFFICER JUAN VELENCIA, individually and in his capacity as a Deputy with the Sonoma County Sheriff's Department; and DOES 1-100, Inclusive, | [FRCP 12(b)(6)]<br><br>Date: March 11, 2011<br>Time: 10:00 a.m.<br>Location: Ctrm. 8, 19th Floor |
| Defendants. | |

Defendants Bill Cogbill, John Gillette, Jeffrey Toney and Juan Valencia ("County defendants") respectfully submit this reply brief in support of their motion to dismiss.

**A.    *Iqbal* Pleading Standards Apply, Replacing The "Fair Notice" Standard Cited in Plaintiff's Opposition.**

Relying on decades-old authority regarding pleading standards in federal complaints, plaintiff asserts that "general notice" of the claim (or "fair notice") is all that is required at the pleading stage to survive motion to dismiss. (Plaintiff's Opposition, p. 4:10-26.) However, the Supreme Court has

unequivocally held that such "fair notice" standards will no longer apply to constitutional claims against official actors. The traditional standard, set forth in *Conley v. Gibson*, 355 U.S. 41 (1957) (cited by plaintiff at p.3:17-25), was questioned first by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 at 557 (2007) and later by the *Iqbal* decision: "*Conley's* oft-cited maxim that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' *Conley*, 355 U.S. at 45-46, 78 S.Ct. 99, read literally, set the bar too low. *See Twombly*, 550 U.S. at 561-62, 127 S.Ct. 1955. '[A]fter puzzling the profession for 50 years,' the Court concluded, *Conley's* 'no set of facts' refrain 'is best forgotten as an incomplete, negative gloss on an accepted pleading standard....' *Id.* at 563, 127 S.Ct. 1955." *Moss v. U.S. Secret Service*, 572 F.3d 962, 968 (9th Cir. 2009). Then, in *Iqbal*, the Court first explained that "bare assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim," for the purposes of ruling on a motion to dismiss, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009) (quoting *Twombly*, 550 U.S. at 555). Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion-even if that conclusion is cast in the form of a factual allegation. *Id*. In *Iqbal,* the result was that the Court assigned no weight to bare allegations that a defendant "knowingly and willfully subjected" plaintiff to unfair treatment "for no legitimate penological interest." *Id.*

Here, allegations to the effect that the defendants "knowingly conspired to falsify reports" or "knowingly implemented unconstitutional policies" are precisely the type of formulaic recitations that the *Iqbal* Court found offensive, and which cannot be given the inferential weight that allegations containing factual content are afforded at the motion to dismiss stage. What is the "falsified material" that the deputies are alleged to have included in their reports? Where is the agreement between them and what was the nature of the agreement from which to infer a conspiracy?[1] Similarly, Sheriff Cogbill is alleged to have "demonstrated deliberate indifference" to a "pattern and practice" of violations, and demonstrated a "lack of adequate supervisorial response,"

---

[1] Plaintiff's sole rebuttal to the motion to dismiss Deputy Valencia from this suit urges that plaintiff has adequately alleged that a "conspiracy" exists as between the County defendants (Opposition, p. 5:23-6:6), but the plaintiff has not included a cause of action for conspiracy in her complaint; rather, Deputy Valencia is included in the causes of action for unlawful search and seizure and unlawful denial of plaintiff's right to refuse medical treatment, neither of which is supported by any factual allegations.

1. but plaintiff's allegations are devoid of factual content: What policy? How did Sheriff Cogbill's actions demonstrate "deliberate indifference" to the plaintiff?  These are precisely the same allegations that the Supreme Court found to be wanting against the Ashcroft defendants in *Iqbal:* "[Plaintiff] alleged that former Attorney General of the United States John Ashcroft and Federal Bureau of Investigation Director Robert Mueller, by specifically authorizing an unconstitutional detention policy, subjected him to 'harsh conditions of confinement on account of his race, religion, or national origin.'"  *Moss v. U.S. Secret Service, supra*, 572 F.3d 962, 969, citing *Iqbal* at 1953. There was no deference afforded to such allegations.

The factual allegations in *Moss* of the same style were also entitled to no deference by the Court:

> The bald allegation of impermissible motive on the Agents' part, standing alone, is conclusory and is therefore not entitled to an assumption of truth.  The same is true of Plaintiffs' allegation that, in ordering the relocation of their demonstration, the Agents acted in conformity with an officially authorized *sub rosa* Secret Service policy of suppressing speech critical of the President.  The allegation of systematic viewpoint discrimination at the highest levels of the Secret Service, without *any* factual content to bolster it, is just the sort of conclusory allegation that the *Iqbal* Court deemed inadequate, and thus does nothing to enhance the plausibility of Plaintiffs' viewpoint discrimination claim against the Agents.

*Moss, supra* at 970.  The other "factual"  allegations considered in *Moss*– that Agents were instructed to move persons from a certain area; that Agents explained a desire to ensure that protesters remained out of "handgun" range; that this was a pretext for moving anti-Bush viewpoints out of earshot of the President; that the pro-Bush demonstrators were allowed to remain in closer proximity; that non-protestor patrons were not required to be evacuated from the area or subject to screening that the anti-Bush protestors were – were all considered inadequate, and the court concluded that "Plaintiffs' complaint fails to plead facts plausibly suggesting a colorable [ ] claim against the Agents." Although they were found "at some level" to be "consistent with a viable First Amendment claim," they were still found inadequate to state a claim under the *Twombly* and *Iqbal* standards.  *Id.* at 971-972.

Applying the proper standards, the allegations in plaintiff's complaint fail to plausibly suggest a colorable claim of any kind against Sheriff Cogbill and Deputy Valencia.

//

**B.     Plaintiff's Opposition Fails to Address Defendants' Challenge to Assertions of First, Fifth and Eighth Amendment Violations.**

Defendants urged in their motion that plaintiff's references to the First, Fifth and Eighth Amendments in her Complaint were improper. (See, Defendants' Motion to Dismiss, pp. 8-9.) Plaintiff has failed to address these issues in her opposition, and thus apparently concedes the issue. Defendants request that the Court dismiss any claims asserted under the First, Fifth and Eighth Amendments, accordingly.

**C.     Sheriff Cogbill Is Immune from Liability Pursuant to Eleventh Amendment.**

Plaintiff's claim that Cogbill is liable "as the individual responsible for enforcing the regulations fo the [Department] and for ensuring that Sonoma County Sheriff's Department police personnel obey the laws" (Opposition, 5:3-5) is the type of activity for which Sheriff Cogbill is shielded under the Eleventh Amendment immunity. In *Committee for Immigrant Rights of Sonoma County v. Sonoma County*, 2010 WL 2465030 (N.D.Cal. 2010), the plaintiff sued the Sheriff, among others, for alleged unconstitutional policies pertaining to cooperation with Federal ICE agents in apprehending and arresting persons for immigration violations. The law enforcement activities of the Sheriff in this context were found to be barred by the Eleventh Immunity:

> The County contends that the first three claims for relief of the second amended complaint, (unreasonable search and seizure, equal protection, and due process), all brought under 42 U.S.C. § 1983, are barred by the Eleventh Amendment. Although prior Ninth Circuit precedent did not treat sheriffs as state officers for purposes of that constitutional provision, the California Supreme Court has since concluded that sheriffs are state officers in circumstances like these. *Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004). While some district courts have continued to follow prior circuit law, the more persuasive analysis is that even though the Court need not "blindly accept" the *Venegas* decision, it represents the correct statement of the function of California sheriffs. See *Walker v. County of Santa Clara*, 2005 WL 2437037, *4 (N.D.Cal.2005).

Id. at *3.

In *Walker v. County of Santa Clara*, 2005 WL 2437037 (N.D.Cal.2005), the allegation against the Sheriff was similarly stated– that is, that the policies ratified by the County Sheriff in investigating crimes were unconstitutional. That court also held: "As the sheriff and district attorney are both held to be state actors, they are entitled to sovereign immunity under the Eleventh Amendment. See *McMillian v. Monroe County*, 520 U.S. 781, 786-93 (1997) (county sheriff cannot be sued for damages under § 1983 where survey of state law reveals sheriff represents the State, not

the county, in official policymaking capacity)."

In opposition, plaintiff has directed this Court to no authority suggesting that the analysis employed by the Northern District judges on this issue is flawed or otherwise questionable. She simply urges that the Court not follow the *Venegas* decision or those judges who have found its reasoning sound. It is respectfully requested that the Second Cause of Action against Sheriff Cogbill and, consequently, the County of Sonoma, be dismissed.

**D.    The Alleged Infringement Of Plaintiff's "Right to Refuse Medical Treatment" Does Not Rise to Level of a Constitutional Violation as a Matter of Law.**

It is generally recognized that every alleged instance of use of force (for instance, putting one's hands behind one's back for the purposes of applying handcuffs) will not invariably constitute sufficient allegations to constitute a cause of action for excessive force: a complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above the speculative level. *See Bell Atlantic v. Twombly*, *supra,* 550 U.S. 544; *Bowles v. State*, 37 F.Supp.2d 608, 612 (S.D.N.Y.1999) (in § 1983 action, arrestee failed to state claim of use of excessive force, where arrestee merely alleged that he was pushed and shoved by officer during search incident to arrest). The same must hold true for other claims, such as plaintiff's Fourth Cause of Action which alleges an unconstitutional interference with her stated "right to refuse medical treatment." There must be some analysis as to whether the wrong that is alleged– here, that plaintiff's knee was tended to by a medic against her wishes– rises to the level of a constitutional violation even if accepted as true. Plaintiff does not allege that any surgical procedures were undertaken against her wishes; that she was forced to take medication against her wishes; that she was hospitalized against her wishes; or that she was otherwise impacted to any magnitude that has been recognized in the law as constituting an infringement on the right to privacy so great that it could reasonably raise issues of constitutional proportion.

The cases cited by plaintiff in her opposition underscore the disparity between her own allegations and the types of situations in which the courts have been willing to extend constitutional protection; some are purely medical malpractice cases, having nothing to do with constitutional claims:

*Schloendorff v. Society of New York Hospital*, 211 NY 125 (1914):   Medical malpractice case involving surgery undertaken by hospital while plaintiff was unconscious, after she specifically informed hospital she did not want surgery.

*Cobbs v. Grant*, 8 Cal.3d 229 (1972): Plaintiff's verdict for medical battery against surgeon on theory of withholding information about the risks associated with the surgery which resulted in removal of plaintiff's spleen and 50% of his stomach was reversed based upon instructional error.

*Thor v. Superior Court*, 5 Cal.4th 725 (1993): right to exercise control over one's body is "broad enough" to encompass the right to refuse life-sustaining treatment, even if to do so would hasten death.  Prisoner had right to refuse "gastrojejunostomy," "[a] surgical operation for the creation of an anastomosis (artificial communication) between the stomach and the jejunum [forming a bypass for food]. A "gastrostomy" is "[t]he surgical cutting of an opening into the stomach wall through the wall of the abdomen, usually in order to create a channel for artificial feeding...." *Id.* at 733, fn. 1.

*In re Qawi* 32 Cal.4th 1 (2004): The Mentally Disordered Offender ("MDO") can be compelled to take antipsychotic medication in a nonemergency situation only if a court, at the time the MDO is committed or recommitted, or in a separate proceeding, makes one of two findings: (1) that the MDO is incompetent or incapable of making decisions about his medical treatment; or (2) that the MDO is dangerous within the meaning of Welfare and Institutions Code section 5300; <u>the coercive administration of such medication, with its potentially serious side effects, imposes a significant additional burden on the MDO's liberty interest</u>.

It is evident from review of the cases cited in both the moving papers and the opposition that in those cases actually dealing with the constitutional question, the intrusion by the State is so great as to presume constitutional proportions; here, however, no such intrusion is pleaded or present.  It is therefore requested that the Fourth Cause of Action be dismissed, for failure to state a claim.

//
//
//
//

**CONCLUSION**

Based on all of the foregoing, and on the papers filed in support of the motion, County defendants respectfully request that their motion be granted in its entirety.

DATED: February 24, 2011

SENNEFF FREEMAN & BLUESTONE, LLP

By: */s/ Bonnie A. Freeman*
    Bonnie A. Freeman
Attorneys for Defendants County of Sonoma, Bill Cogbill, John Gillette, Jeffrey Toney and Juan Valencia