IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TAMARA JOHNSTON,

    Plaintiff,

v.

COUNTY OF SONOMA, et al.,

    Defendants.

No. C 10-03592 CRB

**ORDER GRANTING MOTION TO DISMISS IN PART**

This is a case against the County of Sonoma, the Sheriff and Sheriff's Department, and three individual officers stemming from an arrest. Plaintiff Tamara Johnston makes claims for excessive force, Monell liability, unlawful seizure and imprisonment, and failure to respect her right to refuse medical treatment. Defendants have moved to dismiss certain Defendants and claims. The Motion is GRANTED in part and DENIED in part as follows.[1]

## I. BACKGROUND[2]

Just before 10:00 p.m. on August 15, 2008, Johnston fell in her driveway. Compl. (Dkt. 1) ¶ 19. Shortly thereafter, one of Johnston's neighbors called 911 to report that she had fallen and might be injured. Id. ¶ 20. Three officers responded to the call: Juan Valencia, John Gillette, and Jeffrey Toney. Id. ¶¶ 23. Upon their arrival, Officer Valencia

---

[1] The Court finds this matter appropriate for disposition without argument.

[2] As this matter comes before the Court on a motion to dismiss, the facts are presented in the light most favorable to Plaintiff and drawn from the Complaint and judicially noticeable sources.

interviewed Johnston's husband, and Officers Gillette and Toney opened a private gate and entered Johnston's property while she was lying on the ground. Id. ¶ 22-23. Officer Gillette ordered Johnston to her feet, but she informed him that she had recently hurt her knee. Id. ¶ 26. Officer Gillette responded that medical personnel were going to treat her knee, but she "clearly and unequivocally informed [Officers Gillette and Toney] that she did not wish to receive medical treatment." Id. ¶ 28. Officer Gillette reiterated his order to Johnston that she stand. Id. ¶ 29. She refused. Id. ¶ 30.

At that point, Officer Gillette "initiated harsh and aggressive physical contact with [Johnston's] person . . . to force [Johnston] to her feet[,]" and "[Officer Toney] also aggressively grabbed Plaintiff's arms and shoulders in an attempt to force Plaintiff to stand on her injured knee." Id. ¶¶ 31-32. When the Officers were unable to force her to stand, "both aggressively and forcefully forced her back onto the ground and handcuffed [her.]" Id. ¶ 34. Then, notwithstanding "repeated refusals, [Officers Gillette and Toney] forced [Johnston] to submit to medical treatment by paramedics who arrived on the scene." Id. ¶ 35. Following receipt of the unwanted medical treatment, Johnston was placed into a police car and told she was being arrested for "trying to escape." Id. ¶ 38.

Two days after the incident, all three officers prepared and submitted police reports that "contained misrepresentations of fact, false statements, exaggerations, and intentional omissions of material and/or exculpatory facts" and did so for the purpose of covering up each others' misdeeds. Id. ¶ 39.

Johnston was charged with violating California Penal Code Section 148(a)(1) (resisting arrest). Id. ¶ 41. In the course of Johnston's criminal proceeding, the State Court ruled that the Officers' entry onto her property and her detention for medical treatment were lawful. Request for Judicial Notice (Dkt. 9) Ex. B. The criminal action was conditionally dismissed subject to Johnston "obeying all laws" for one year. Id. Ex. A.

Johnston filed suit in this Court on August 13, 2010 and asserts four claims under 42 U.S.C. § 1983: excessive force, Monell, unlawful seizure and imprisonment, and forced medical treatment. Defendants have moved to dismiss the Monell and medical treatment

2

claims and also assert more generally that (1) the claims against Officer Valencia should be dismissed; and (2) the Complaint generally fails to state a claim under the First, Fifth, and Eighth Amendments.  Mot. to Dismiss Compl. (Dkt. 18) at 2.

## II.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "Detailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)).  According to the Supreme Court, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1949-50.  In determining facial plausibility, whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950.

## III.    DISCUSSION

### A.      The Claims Against the Sheriff and County Are Dismissed

#### 1.       The Sheriff is Immune and, in any Case, Plaintiff Has Not Stated a Claim Against Him

Whether sheriffs are state or local officials for purposes of section 1983 suits challenging police practices is a somewhat open question.  The answer to that question is important, because state actors acting in their official capacities are entitled to Eleventh Amendment immunity whereas actors for political subdivisions (like counties) are not.  See Pittman v. Oregon, Employment Dept., 509 F.3d 1065, 1071 (9th Cir. 2007).  In one view, adopted by Judge Seeborg and others and based on Venegas v. County of Los Angeles, 32 Cal. 4th 820 (2004), sheriffs are state actors entitled to Eleventh Amendment immunity at least where, as here, their activities relate to law enforcement duties within their jurisdictions.  Committee for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma, No. C 08-4220-RS,

3

2010 WL 2465030 at *3 (N.D. Cal. June 11, 2010).  Other district courts continue to adhere to the Ninth Circuit's ruling in Brewster v. Shasta County, 275 F.3d 803, 812 (9th Cir. 2001), which held that sheriffs are not immune from section 1983 suits when engaged in law enforcement duties because even in that context they act as the final policymaker for a county.  See, e.g., Fontana v. Alpine Cty, – F. Supp. 2d ----, 2010 WL 3834823 (E.D. Cal. 2010) ("To the extent the conduct at issue in this case constitutes 'law enforcement' duties, the court is bound by Ninth Circuit precedent, specifically, Brewster . . . .").

In this Court's view, Judge Seeborg has the more sensible position not because the Venegas case is binding but because "it represents the correct statement of the function of California sheriffs."  Committee for Immigrant Rights of Sonoma Cty., 2010 WL 2465030 at *3 (citing Walker v. Cty. of Santa Clara, No. C 04-02211 RMW, 2005 WL 2437037 at *4 (N.D. Cal. Sept. 30, 2005) ("[T]he Ninth Circuit's decision in Brewster is directly at odds with the California Supreme Court's subsequent holding in Venegas that California sheriffs are state officers while performing law enforcement duties, and although this court need not 'blindly accept' the Venegas court's decision, . . . the California Supreme Court's decision comports with this court's understanding of the function of California sheriffs.") (citation omitted).

Even if this Court were to conclude that the claims against the Sheriff are not barred by immunity, Johnston has failed to state a plausible claim against the Sheriff.  The allegations concerning the Sheriff's official actions as county policymaker are entirely conclusory.

Accordingly, the claim against the Sheriff is DISMISSED with prejudice.

### 2. The Monell Claim is Not Plausibly Pleaded

For substantially the same reasons that Johnston has failed to state a plausible claim against the Sheriff (assuming he is not immune), she has also failed to state a Monell claim against Sonoma County and/or the Sonoma County Sheriff's Department.  See Monell v. Dept. of Social Servs., 436 U.S. 658, 691-94 (1978).  Accordingly, the Monell claim is dismissed.  The dismissal of the Monell claim is without prejudice.

4

### B. The Claims Against Officer Velencia Are Dismissed

The only allegations in the Complaint concerning Officer Velencia are that (1) he interviewed Johnston's husband; (2) he filed a police report containing "misrepresentations of fact, false statements, exaggerations, and intentional omissions of material and/or exculpatory facts" and (3) he filed the false police report in the course of "conspir[ing] and act[ing] in concert in order to cover up the misdeeds of [his] fellow defendants . . . ." Compl. (Dkt. 1) ¶¶ 39-40.

On the basis of these allegations, Officer Valencia is named as a Defendant in causes of action for (1) unlawful seizure and imprisonment; and (2) failure to respect Johnston's right to refuse medical treatment. The theory is essentially that Valencia was an after-the-fact conspirator in the violation of Johnston's rights and participated in a cover-up.[3]

A "cover up" theory of section 1983 liability is only viable where the cover-up itself deprives a plaintiff of constitutional rights. See Harmon v. City of St. Louis County, 2009 WL 880024 at *3 (E.D. Mo. Mar. 30, 2009) ("There is no constitutional right to an accurate police report," and an officer's falsification of a report "only constitutes a due process violation when the alleged falsified report leads to an unconstitutional deprivation of life, liberty, or property.") (collecting cases). Here, taking the Complaint as true, Johnston's liberty interests were already impaired when Valencia filed the police report. Officers Gillette and Toney had already forced her to submit to medical treatment for her knee and arrested her for violating California Penal Code section 148. Thus, even if Officer Valencia filed a false police report to help cover-up Officer Gillette's and Officer Toney's misdeeds, such action is not alleged to have caused the deprivation of Johnston's constitutional rights at issue in this case.[4]

---

[3] The Complaint does not include a specific cause of action for conspiracy, but reading the allegations liberally in Johnston's favor, the Court assumes that her allegations regarding Valencia sound, if at all, in a conspiracy framework.

[4] Even assuming Johnston has pleaded that Officer Valencia's filing of a false police report contributed to the deprivation of her liberty interest, her conspiracy claim fails for lack of plausibility. A plausible conspiracy claim requires more than pleading disagreement with the contents of multiple police reports that appear to tell the same story. See Haggins v. City of St. Paul, Civ. No. 09-537

Therefore, the claims against Officer Valencia are DISMISSED without prejudice.

### C. The Claim for "Failure to Respect Plaintiff's Right to Refusal Medical Treatment" Is Viable

Defendants argue that Johnston's claim based on her alleged forced medical treatment is not viable because "[t]here is simply no constitutionally protected interest protecting a person from having a knee looked at by medically trained personnel in response to a 911 call for assistance." Defs.' Mot. to Dismiss (Dkt. 18) at 8. Defendants cite no authority for the proposition that a person lacks a liberty interest in refusing medical treatment of the sort administered here and admit that, as a general matter, claims of forced medical treatment usually require "evidentiary considerations" balancing the liberty interest against the relevant state interests. Id. at 7-8. Although it is true that the liberty interest in not having paramedics examine a knee is less significant than the liberty interest in not being forced to receive life sustaining treatment, see Cruzan v. Missouri Dept. of Health, 497 U.S. 261, 278 (1990), such does not mean that there is no liberty interest implicated when the police force someone to submit to treatment by paramedics.

Accordingly, Defendants' Motion to Dismiss the forced medical treatment claim against Officers Gillette and Toney is DENIED.

### D. Claims Under the First, Fifth, and Eighth Amendments

Defendants also move to dismiss Johnston's claims to the extent brought under the First, Fifth, and Eighth Amendments on the basis that such Amendments are not relevant to the causes of action alleged.

Johnston has pleaded four specific causes of action in her Complaint. Although she may have pleaded certain legal bases for those claims that are not applicable, each cause of action (other than, at this point, the Monell claim) has a legal basis. Accordingly, at this time

---

(DWF/RLE), 2010 WL 1380134 at *12 n.6 (D. Minn. Mar. 1, 2010) ("If the Plaintiff's claim can be read to allege a conspiracy to violate civil rights, by the filing of false police reports, then we would also find that he has failed to adequately plead such a claim, because he has not pled any facts which could support 'a meeting of the minds' to support such a claim, but instead, has relied upon his disagreement with the version of facts that is contained in the Defendants' police reports . . . .").

there is no reason to "dismiss" claims to the extent brought pursuant to allegedly irrelevant Constitutional provisions.

**IV.   CONCLUSION**

Defendants' Motion is granted in part and denied in part. Specifically:

- The claims against the Sheriff are dismissed with prejudice;
- The Monell claim is dismissed without prejudice;
- The claims against Officer Valencia are dismissed without prejudice; and
- The Motion is DENIED in all other respects.

Any amended complaint with respect to the claims dismissed without prejudice must be filed by April 1, 2011.

**IT IS SO ORDERED.**

Dated: March 9, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE