1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11

TAMARA JOHNSTON,

No. C 10-03592 CRB

12

       Plaintiff,

**ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT**

13

  v.

14

COUNTY OF SONOMA, ET. AL.,

15

       Defendants.

16

_____/

17
18
19
20
21
22
23
24
25
26
27
28

      Tamara Johnston filed suit against the County of Sonoma, its elected Sheriff, and three deputy sheriffs who responded to a 911 call for assistance from Johnston's neighbor. Dkt. 1.  The case originally asserted four claims under 42 U.S.C. § 1983: excessive force, Monell, unlawful seizure and imprisonment, and forced medical treatment.  Pursuant to the motion to dismiss, the Court dismissed the claims against defendant Sheriff Bill Cogbill with prejudice.  Order Granting Motion to Dismiss in Part (dkt. 16) at 7.  The Court dismissed the Monell claims against the County of Sonoma and the claims against defendant Juan Valencia without prejudice.  Id.  The Plaintiff failed to amend her Complaint to assert claims against those defendants.  Thus, the case is proceeding only against defendants Jeffrey Toney and John Gillette on three claims: excessive force, unlawful seizure and imprisonment, and forced medical treatment.  Id.  The remaining defendants now move for partial summary judgment.  Dkt. 25.  Defendants argue that Plaintiff's claim for unlawful seizure and imprisonment and her claim for forced medical treatment are barred by collateral estoppel.

United States District Court
For the Northern District of California

1  Since the facts underlying these claims were previously determined by the state court judge,

2  the Court GRANTS Defendants' Motion.

3  **I.      FACTUAL BACKGROUND**

4          John Gillette and Jeffrey Toney were among the deputies that responded to a 911

5  dispatch which led to the arrest and criminal prosecution of plaintiff.  Giordano Decl. (dkt.

6  25-1) ¶ 7.  On August 15, 2008, a 911 call was placed by a citizen reporting a domestic

7  disturbance at 211 Decanter Circle, Windsor, California (Plaintiff's house).  The report

8  included a question of whether the woman (Plaintiff) was extremely intoxicated, but

9  emphasized the fact that she appeared to be in need of medical assistance; she was yelling

10  and appeared to be injured.  Giordano Decl. ¶ 6, Ex. A.[1]

11          As a result of the call, the deputies responded and ultimately, Plaintiff was arrested

12  and charged with violation of Penal Code §148(a)(1).  Penal Code Section 148(a)(1)

13  provides: "Every person who willfully resists, delays, or obstructs any public officer, peace

14  officer, or an emergency medical technician, . . . , in the discharge or attempt to discharge

15  any duty of his or her office or employment, when no other punishment is prescribed, shall

16  be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a

17  county jail not to exceed one year, or by both that fine and imprisonment."  A criminal

18  complaint was filed by the Sonoma County District Attorney's Office.  Defendants' Request

19  for Judicial Notice ("RJN") (dkt. 25-3) Ex. A.[2]

20          The DA's Office prosecuted the misdemeanor charge, during the course of which

21  Plaintiff's criminal defense attorney filed a motion challenging whether the deputies had

22  probable cause to enter Plaintiff's property, to arrest her, and to have her examined by

23  medical personnel at the scene.  RJN Ex. B.  The motion was briefed by both sides (RJN Ex.

24

25          [1]  Defendants argue the Incident Log and procedures described in Lt. Giordano's
26  declaration are not offered for the truth of what is asserted therein, but rather, are offered as
   records of regularly conducted activities.  See Federal Rule of Evidence 803(6).

27          [2]  The Court GRANTS the Defendants' Request for Judicial Notice.  The RJN includes
28  facts from the public record related to the prosecution, which are appropriate for consideration
   in a request for judicial notice.  United States ex rel. Robison Rancheria Citizens Council v.
   Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).

**United States District Court**
For the Northern District of California

C), and a hearing proceeded which included testimony by Deputy Gillette and by Plaintiff's husband, Richard Johnston. RJN Ex. E. Further briefing was submitted by both sides. RJN Ex. C.

The Hon. Virginia Marcoida held the hearing on the motion to dismiss on May 21, 2009, at which time oral presentations were made by both sides. RJN Ex. F. Plaintiff argued that she exercised a constitutional right to refuse medical treatment and that, therefore, she rightfully resisted the officer because the officer's act of restraining her until paramedics arrived was unreasonable, "including the evidence of the defendant [Johnston] attempting to push past the officer, which is the basis for the Peal Code Section 148(a)(1) charge." Id. at 10:15-25.

At the conclusion of the hearing, Judge Marcoida made the following ruling: "When reviewed as a motion to suppress on the grounds the officer unlawfully detained defendant or viewed as a motion to dismiss on the grounds that the officer was not lawfully performing his duties when defendant resisted, defendant's claim is without merit." The matter was set for a readiness conference on August 14, 2009. Id. at 14:19. At that appearance, a conditional dismissal was offered, and the case was dismissed with condition that Plaintiff obey all laws for one year. RJN Ex. G.

Plaintiff then filed this action, alleging various violations of 42 U.S.C. § 1983. This Court dismissed several of the claims and Defendants, and now the remaining Defendants move for partial summary judgment on two of the three remaining claims.

## II.   LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden is on the moving party to demonstrate that there is no genuine dispute with respect to any material fact and that it is entitled to judgment as a matter of law.

United States District Court
For the Northern District of California

1  Id. at 323.  A genuine issue of fact is one that could reasonably be resolved in favor of the

2  nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute

3  is "material" only if it could affect the outcome of the suit under the governing law.  Id. at

4  248-49.

5  　　　If the moving party does not satisfy its initial burden, the nonmoving party has no

6  obligation to produce anything and summary judgment must be denied.  Nissan Fire &

7  Marine Ins. Co., Ltd. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).  If, on the other

8  hand, the moving party has satisfied its initial burden of production, then the nonmoving

9  party may not rest upon mere allegations or denials of the adverse party's evidence, but

10 instead must produce admissible evidence that shows there is a genuine issue of material fact

11 for trial.  Id. at 1103.  The nonmoving party must "set out 'specific facts showing a genuine

12 issue for trial.'"  Celotex, 477 U.S. at 324-25 (quoting Fed. R. Civ. P. 56(c)).  If the

13 nonmoving party fails to make this showing, the moving party is entitled to judgment as a

14 matter of law.  Id. at 323.

15 　　　When the moving party does not bear the burden of proof on an issue at trial, the

16 moving party may produce evidence negating an essential element of the non-moving party's

17 case, and if the moving party produces such evidence, the burden shifts to the non-moving

18 party to produce specific evidence to show that a dispute of material fact exists.  Nissan Fire

19 & Marine Ins. Co., Ltd., 210 F.3d at 1105-06.

20 　　　When deciding a summary judgment motion, a court must view the evidence in the

21 light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

22 Anderson, 477 U.S. at 255.  However, it is not a court's task "to scour the record in search of

23 a genuine issue of triable fact."  Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)

24 (internal quotations omitted).  Rather, a court is entitled to rely on the nonmoving party to

25 identify with reasonable particularity the evidence that precludes summary judgment.  See id.

26 **III.   DISCUSSION**

27 　　　Defendants move for partial summary judgment on the basis that Plaintiff's unlawful

28 seizure and imprisonment claim, and unlawful forced medical treatment claim are barred by

United States District Court
For the Northern District of California

1  collateral estoppel.  Plaintiff argues first that Defendants waived this argument, and second,

2  that it does not apply.  The Court disagrees on both points.

3      **A.      Waiver**

4      Plaintiff argues Defendants have waived the defense of collateral estoppel because it

5  was not listed as an affirmative defense in Defendants' Answer.  Dkt. 22.  Plaintiff argues

6  that since Defendants failed to raise the defense in their Answer, it cannot be raised in a

7  motion for partial summary judgment, citing Sanchez v. City of Santa Ana, 915 F.2d 424,

8  431 (9th Cir. 1990) ("Res judicata is an affirmative defense and is ordinarily waived if not

9  specially pleaded.").  Still, in Sanchez, the court found no waiver because the defense could

10 not have been raised at the time of the answer, and because "[w]hile considerable time had

11 passed since the date of the award, the [defendant] did raise the issue prior to the trial on

12 damages, thus giving [plaintiff] notice of the plea of estoppel and a chance to argue . . . why

13 the imposition of estoppel would be inappropriate."  Id. at 432 (internal quotation marks

14 omitted).  Thus, Sanchez recognizes that there can be exceptions to waiver, and the centrality

15 of notice and prejudice to the calculation.

16     Defendants argue that waiver is subject to the control of the courts, and so long as the

17 parties have been provided reasonable notice of an issue and the opportunity to be heard, the

18 court may consider the issues through the court's inherent powers and in the interests of

19 justice, citing Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 228 (1995).  In Plaut, by way of

20 illustrating another point, the Supreme Court stated that "waivers of res judicata need not

21 always be accepted – that trial courts may in appropriate cases raise the res judicata bar on

22 their own motion."  Id. at 231.

23     The Ninth Circuit concurs: "It is consistent with [the principles of res judicata] to

24 permit a court which has been apprised by the plaintiff of an earlier decision arising out of

25 the same contract upon which the action before the court is based, to examine the res judicata

26 effect of that prior judgment sua sponte."  McClain v. Apodaca, 793 F.2d 1031, 1033 (9th

27 Cir. 1986).  This is consistent with the statement in Sanchez that the defense is ordinarily

28 waived if not specially pled, since that necessarily implies that the defense is not always

United States District Court
For the Northern District of California

waived.  Rather, it is based upon the situation of the case.  See, e.g., State of Nev. Emps. Ass'n, Inc. v. Keating, 903 F.2d 1223, 1225 (9th Cir. 1990) (finding it improper to raise res judicata sua sponte where the district court failed to allow parties to fully brief the issue posttrial, but stating with the approval general sentiment that res judicata can be raised sua sponte when the court "subject[s] its res judicata decision to the rigors of the adversarial process").

Defendants raised the issue of res judicata in March 2011 in the parties' Joint Case Management Conference Statement.  Dkt. 15 (listing as a legal issue: "The legal effect of the finding by the Sonoma County Superior Court that: (1) plaintiff lacked capacity to consent to or to refuse medical treatment on the date of the incident; and (2) that the officers had probable cause to enter the back yard without a warrant").  In addition, Defendants state the issue was thoroughly vetted at the ENE held in June 2011, and raised again at the further case management conference held on June 13, 2011.  Reply at 2.  Moreover, the issue is fully briefed and addressed by both parties in the briefing for this motion.

Here, there is evidence that the Plaintiff was on notice of the relevance of this issue as early as March 2011, and it has been fully briefed before this court.  Thus, the Court finds that Defendants have not waived the issue.  Alternatively, the Court finds it appropriate to raise the issue sua sponte here.  The issue has been subjected "to the rigors of the adversarial process" and thus, there is not prejudice to Plaintiff in addressing the issue.

**B.      Collateral Estoppel Analysis**

Collateral estoppel "precludes relitigation of issues argued and decided in prior proceedings."  Diruzza v. County of Tehama, 323 F.3d 1147, 1152 (9th Cir. 2003). Collateral estoppel is applied if: (1) the issue sought to be precluded from religitation is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) it was necessarily decided in the former proceeding; (4) the decision in the former proceeding was final and on the merits; and (5) the party against whom

United States District Court
For the Northern District of California

1    preclusion is sought is the same as, or in privity with, the party to the former proceeding.  <u>Id.</u>

2    (citing <u>Lucido v. Sup. Ct.</u>, 51 Cal. 3d 335, 341 (1990)).[3]

3           Defendants argue collateral estoppel applies to the unlawful seizure and imprisonment

4    claim, and the unlawful forced medical treatment claim.  Plaintiff argues in response that

5    elements 1, 2, and 4 are missing here: the issues are not identical, were not necessarily

6    decided, and the decision was not final and on the merits.  The Court will address each

7    objection in turn.

8                          **1.    Final Decision on the Merits**

9           The parties disagree over whether the Superior Court's determination of issues on

10   Plaintiff's Motion to Suppress/Motion to Dismiss in the state court criminal proceedings is a

11   final judgment for the purposes of collateral estoppel.[4]

12          In <u>Schmidlin v. City of Palo Alto</u>, 157 Cal. App. 4th 728, 774-75 (2007), the court

13   stated that the denial of a motion to suppress that argued an arrest and detention were

14   unlawful, was sufficiently final for collateral estoppel purposes.  There, the court found that a

15   motion to suppress that was denied "was sufficiently firm to be deemed final."  <u>Id.</u> at 775.

16          Plaintiff argues <u>Schmidlin</u> is distinguishable because it dealt with a motion to suppress

17   on a felony charge, while this case involves a misdemeanor charge.  Reply at 7 ("Defendants

18   fail to mention that <u>Schmidlin</u> identified a possibility that prior adjudication of an issue

19   during the pre-trial phase of a misdemeanor criminal case might not be deemed a finding of

20   finality for preclusion purposes.").  First, Plaintiff provides no citation to the case to support

21   this assertion.  Second, this is likely because the case does not support such an assertion.  In

22   <u>Schmidlin</u>, the court discussed the difference between the review of decisions on motions to

---

[3] California state law provides the rule of decision here.  <u>See</u> <u>Haupt v. Dillard</u>, 17 F.3d 285, 288 (9th Cir. 1994) (stating federal courts apply the collateral estoppel doctrine of the relevant state court).

[4] It appears Plaintiff brought the motion in the state court as a motion to dismiss, but the court treated the issue as identical whether it was called a motion to dismiss or a motion to suppress: "When reviewed as a motion to suppress on the grounds the officer unlawfully detained defendant or viewed as a motion to dismiss on the grounds that the officer was not lawfully performing his duties when defendant resisted, defendant's claim is without merit." RJN Ex. F 13:1-5.

United States District Court
For the Northern District of California

suppress in felony and misdemeanor proceedings.  In a misdemeanor case, denial of a motion to suppress is immediately and separately appealable, while in a felony case, a denial of a motion to suppress can only be appealed by an extraordinary writ.  Id. at 774 (citing Cal. Penal Code § 1538.5(j), (i)).  The court stated that the discretionary character of the remedy in felony cases may weigh against a finding of finality for preclusion purposes, but in contrast, "that the procedure for misdemeanors appears designed to encourage, if not require, a single full and fair hearing of the matter followed by immediate appellate review."  157 Cal. App. 4th at 774 (emphasis added).  Thus, the case actually holds the opposite of what Plaintiff claims.  Moreover, it clearly supports the conclusion that decision on a motion to suppress in a misdemeanor case can be final for the purposes of collateral estoppel.

In determining finality, courts look to factors including "(1) whether the decision was not avowedly tentative; (2) whether the parties were fully heard; (3) whether the court supported its decision with a reasoned opinion; and (4) whether the decision was subject to an appeal."  Id.  The court in Schmidlin found all the elements met, even in the less final context of a felony prosecution.  Id. at 775.  Here, all the elements are met as well.  The state court unequivocally ruled after full briefing and argument by the parties (as discussed further below); it supported its decision with a reasoned opinion; and the decision was subject to an immediate appeal, even though Plaintiff decided not to pursue an appeal.  RJN Ex. F 10-13.  Thus, the determination by the state court is sufficiently final for collateral estoppel purposes on both claims.

### 2.    Unlawful Seizure and Imprisonment Claim

This leaves Plaintiff's challenges to two other elements of collateral estoppel: (1) whether the issue to be precluded is identical to the issue decided in the prior proceeding, and (2) whether the issue was necessarily decided in the prior proceeding.  The Court turns first to the claim of unlawful seizure and imprisonment.

Defendants argue the issue of probable cause is central to a claim for unlawful seizure and imprisonment under Section 1983.  See Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998) ("To prevail on his § 1983 claim for false arrest and imprisonment,

1   Cabrera would have to demonstrate that there was no probable cause to arrest him.").

2   Defendants argue that in her motion in state court, Plaintiff argued the entry into her yard and

3   her arrest were not supported by sufficient probable cause.  RJN Ex. B.  Defendants then

4   argue that the state court judge fully and necessarily decided the issue of probable cause, and

5   thus, the Section 1983 claim is estopped.

6            In regards to the issue of entry into the yard and the detention of Plaintiff, the state

7   court made the following findings:

8            The court finds that the warrantless entry into the defendant's
         [Johnston's] yard did not violate the Fourth Amendment. The entry was
9        justified under the emergency-aid component of the community-caretaker
         exception to the warrant. When the officers entered the yard, the following
10       facts were known to them: One of the officers had been dispatched to the
         residence regarding a possible domestic dispute; two, the reporting party
11       indicated that there was a need for medical-treatment attention – that there was
         a need for medical attention and; three, the officers observed a female laying
12       face down – lying face down on the cement, leaning into a garbage can, in the
         walkway, between the house and the fence; four, the officers could not see the
13       defendant's head as it was hidden behind a garbage can and; five, the officer
         called out to the defendant and she was nonresponsive. Based on these facts,
14       the officer was justified in entering the yard to check on defendant pursuant to
         the emergency-aid doctrine. The officer testified that he was concerned for the
15       defendant's welfare, and this Court finds his testimony credible.

16           After entry into the yard, the officer approached the defendant and saw
         her pant leg was ripped, and she had a small abrasion on her right knee. The
17       officer saw redness, as if there was bleeding. The officer attempted to engage
         defendant in conversation, asking her what happened. Defendant said,
18       "Nothing happened."

19           The officer detected the smell of alcohol.

20           The officer advised that medical care was on its way. The officer told
         the defendant that he thought her knee needed to be looked at by paramedics.
21
             Defendant responded by saying, "I'll decide that," which the officer
22       interpreted as defendant not wanting care.

23           The officer testified that, aside from the knee injury, he was also
         concerned about other injuries that he could not see and that he wanted her
24       checked out by paramedics.

25           The officer told her to remain seated. When defendant attempted to
         stand up, the officer put his hands on her shoulders, to let her know that he
26       didn't want her to get up.  Defendant stood up, nonetheless, and tried to push
         past the officer by putting her hands up, coming at the officer, and then putting
27       her hands in the officer's chest area. The officer then grabbed defendant by the
         left arm and moved it to the [r]ear of her back. Defendant tried to pull away,
28       flailed her arms, and tried to break free from the officer's grip.

RJN Ex. F 8:22-10:14.  Thus, the Defendants argue that the issue of probable cause for entry and detention of plaintiff has been thoroughly litigated in the proceeding below, both necessarily, and identically to the probable cause requirement central to Plaintiff's Section 19823 claims of false arrest (seizure) and imprisonment.

Plaintiff argues in response that the issues she raises in her civil case are more expansive, and thus, not identical to and not necessarily decided by the state criminal case. Plaintiff argues that in her Complaint she brings constitutional claims for unlawful search and seizure, an unlawful arrest, and a deprivation of life or liberty without due process of law.  Reply at 5, citing Complaint ¶ 61.

Plaintiff argues she does not assert an "unlawful entry" as part of this claim.  Reply at 5. She then argues that the state court judge's opinion should not be given preclusive effect because it "did not address the specifics of Plaintiff's claims – which were focused upon the entry of the officers into Plaintiff's private yard, the reasonableness of the initial detention." Reply at 6.  Perhaps this is not what Plaintiff meant to argue, as the statement as read supports a finding of preclusive effect, as the state court directly addressed this issue.

Moreover, in her Complaint Plaintiff states that one of her violated rights under this cause of action was the "the right to be free from arrest without probable cause."  Complaint ¶ 61(b).  Thus, this is clearly precluded.  In paragraph 61(c) Plaintiff alleges Defendants violated her "right not to be deprived of life or liberty without due process of law."  It is not clear to what she is referring in this cause of action, but given the title of the cause of action, she appears to be restating her objection to her detention and arrest.  This is also undermined by the probable cause finding in state court.  In paragraph 61(a) Plaintiff alleges Defendants violated her right "to be free from unreasonable searches and seizures."  Since Plaintiff does not anywhere allege that she was searched, she must be referring again to her detention and arrest, and the same reasoning applies here as well.

In the briefing and hearing on the motion to suppress in state court, the Judge clearly and thoroughly examined the conduct of the Plaintiff and the officers in the time leading up to, during, and after her contact with, detention, and arrest by the officers.  The state court

1    then determined that the officers conduct during this entire period was lawful.  This is

2    identical to a determination required under Section 1983 for a claim of false arrest, which is

3    what Plaintiff is claiming in her Complaint.  Moreover, the determination that there was

4    probable cause for the entry into the yard and the detention of Plaintiff pending the arrival of

5    paramedics was necessary to resolving the motion to dismiss/motion to suppress.  Thus,

6    collateral estoppel bars this claim, and the Court grants Defendants' motion of partial

7    summary judgment on this claim.

8                      **3.        Right to Refuse Medical Treatment**

9          Defendants argue that Plaintiff's claim that they failed to respect her right to refuse

10   medical treatment is also collaterally estopped by the state court criminal proceeding.  In her

11   Complaint, Plaintiff alleges that Defendants failed "to respect Plaintiff's right to refuse

12   medical treatment."  Complaint Fourth Cause of Action.  In the state court, Plaintiff made the

13   argument that the Defendants' conduct violated her constitutional rights by failing to respect

14   her refusal to accept medical treatment, and the state court clearly addressed this issue.  It

15   determined both the legal and factual issues that necessarily underlie such a claim under

16   Section 1983.  The state court held:

17             [T]his court finds there was insufficient evidence establishing a valid
         waiver of medical treatment. There was insufficient evidence indicated her
18       purported refusal was made of sound mind. The officer was concerned about
         both seen and unseen injuries.  Unseen injuries could include head injuries.
19       Defendant had been found lying face down on the pathway.  She was initially
         unresponsive.  She smelled of alcohol, and her speech was slurred. She
20       exhibited physical injuries. Under these facts it is possible that [Johnston] had a
         head injury that prevented her from making a valid waiver of medical treatment
21       or that she was so intoxicated that she could not make a valid waiver.  It was
         reasonable for the officer to keep her at the scene until paramedics could arrive
22       and evaluate whether she was even competent to validly exercise her right to
         refuse medical treatment.  It would be negligent of an officer to simply walk
23       away from a person in [Johnston's] condition simply because [Johnston] said,
         "I'll see about that," in response to the officer's statement that he thought her
24       knee should be looked at by paramedics.

25   RJN Ex. F. 12:7-28.  Thus, the state court acknowledged that a right to refuse medical

26   treatment existed, but found that it was reasonable for Defendants to act in the manner they

27   did with respect to Plaintiff's alleged refusal of medical treatment.  This issue is identical to a

28   claim that the Defendants violated Plaintiff's right to refuse medical treatment.  Nor does

                                          11

1    Plaintiff point to any evidence in the record, or any case law, that would undermine this

2    argument.

3         Plaintiff's one paragraph argument simply states: "This cause of action is centered

4    around whether the officers, by their actions on August 14, 2009, violated Plaintiff's <u>civil

5    rights</u> by refusing to respect Plaintiff's right to refuse medical treatment.  This cause of action

6    is starkly different, both legally and logically, from the criminal court's determination, in a

7    motion to dismiss, that Plaintiff was not privileged to actively resist her arrest on the night

8    she was forced to submit to medical treatment.  Defendants' efforts to suggest that the civil

9    rights issue at hand is <u>identical</u> to the possible application of a privilege to actively resist a

10   criminal arrest should not be rewarded."  Opp'n at 6.[5]

11        This argument ignores that the state court's actual holding dealt with the evidence of a

12   valid waiver of medical treatment by Plaintiff, not simply whether Plaintiff had a privilege to

13   actually resist arrest.  Thus, the state court found there was insufficient evidence to determine

14   that Plaintiff had validly waived medical treatment, and thus, that <u>Defendants had not

15   violated her constitutional rights</u> in keeping her at the scene till paramedics arrived and

16   examined her.  This is an identical issue to the question Plaintiff appears to ask this Court to

17   decide in the civil suit.  Thus, the Court finds that this claim is collaterally estopped as well.

18   //

19   //

20   //

21   //

22

23        [5] Plaintiff also states that the Court previously upheld this cause of action despite
     Defendants' Motion to Dismiss.  This does not appear relevant.  At the motion to dismiss phase,
24   Defendants challenged this cause of action on the grounds that "[t]here is simply no
     constitutionally protected interest protecting a person from having a knee looked at by medically
     trained personnel in response to a 911 call for assistance."  Defs.' Mot. to Dismiss (dkt. 18) at
25   8. The Court rejected this argument, and found that there was a "liberty interest implicated when
     the police force someone to submit to treatment by paramedics."  Order Granting Mot. to
26   Dismiss in Part (dkt. 16) at 6.  Here, Defendants argue instead that the issue is precluded because
     the state court – which did find there was such a right to refuse medical treatment – found on the
27   <u>merits</u> that there was insufficient evidence to demonstrate a valid waiver of this right.  This is
     totally distinct from whether such a cause of action exists in the first place, and the state court
28   holding is identical to the determination this Court would make in adjudicating whether there
     was a violation of such a right here on the facts.

**IV.     CONCLUSION**

        For the forgoing reasons, the Court GRANTS the motion for partial summary judgment.

        **IT IS SO ORDERED.**


Dated: February 6, 2012                                    _____
                                                           CHARLES  R. BREYER
                                                           UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California